## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steven Nelson,

               Plaintiff,

      v.

James Nelson, Chris Feller, Randy
Skjerven, and AgCountry Farm Credit
Services, ACA,

               Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-4854 ADM/LIB

---

DeWayne A. Johnston, Esq., Johnston Law Office, Grand Forks, ND, on behalf of Plaintiff.

Kip M. Kaler, Esq., Kaler Doeling PLLP, Fargo, ND, on behalf of Defendant James Nelson;
Todd E. Zimmerman, Esq., Fredrikson & Byron PA, Fargo, ND, on behalf of Defendants Chris
Feller, Randy Skjerven, and AgCountry Farm Credit Services, ACA.

---

## I.  INTRODUCTION

On April 21, 2015, the undersigned United States District Judge heard oral argument on

Defendant James Nelson's Motion to Dismiss [Docket No. 30] and Defendants Chris Feller

("Feller"), Randy Skjerven ("Skjerven"), and AgCountry Farm Credit Services, ACA's

("AgCountry") Motion to Dismiss [Docket No. 34].  Plaintiff Steven Nelson opposes the

motions.  For the reasons set forth below, both motions are granted.

## II.  BACKGROUND

Steven Nelson ("Steven") brings civil claims under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., against James Nelson ("James"), the

AgCountry financial institution, and two of AgCountry's employees, Feller and Skjerven

(collectively, the "Defendants").  Steven alleges the Defendants conspired and engaged in

racketeering activities through a pattern of false financial reporting, fictitious financial

transactions, tax evasion, theft, and other conduct.

## A.  The Parties and Legal Entities

Steven and James are brothers.  Together they operated J&S Nelson Farms, LLP ("J&S"

or the "Partnership"), a Minnesota and North Dakota registered farming partnership in which

Steven and James each owned an equal share.  Am. Compl. [Docket No. 29] ¶¶ 12, 13, 20.  J&S

was formed in 1998 and farmed grain and sugar beets in the Red River Valley.  Id. ¶ 29.  At all

relevant times, J&S was governed by a written partnership agreement.  Compl. [Docket No. 1]

Ex. 1 ("Partnership Agreement").  The Partnership Agreement designates Steven and James as

50/50 partners in J&S's profits or losses.  Am. Compl. ¶ 51.  James was responsible for the

Partnership's financial matters; he managed the Partnership's books, accounting, and taxes.  Id. ¶

52.  All Partnership organizational and financial documentation was kept in his home.  Id. ¶¶ 52-

53.  Steven is no longer involved in the Partnership.  Mem. Opp'n. Mot. Dismiss [Docket No.

38] 7.  The current state of the Partnership and its ownership structure is not reflected in the

record.

AgCountry is a federally chartered, member or borrower owned cooperative regulated by

the Farm Credit Administration pursuant to the Farm Credit Act of 1971, 12 U.S.C. § 2000, *et

seq.*[1]  At all relevant times AgCountry performed accounting and tax return services for J&S.

Am. Compl. ¶ 54.  Feller is a Senior Tax Specialist with AgCountry who provided tax planning,

preparation, and book-keeping services to J&S.  Id. ¶ 6.  Skjerven is a banker with AgCountry

---

[1] AgCountry's legal status is explained in Feller, Skjerven, and AgCountry's
Memorandum in Support of its Motion to Dismiss [Docket No. 35].

who assisted J&S with loans and other banking transactions.  Id. ¶ 15.

While not named as defendants, the Amended Complaint generally alleges that James'

sons, Brian and David, are also involved in the events underlying this dispute.  Brian is a farming

partner of his father and with J&S, is an employee of AgCountry, and barters with the

Partnership through his father.  Id. ¶ 61.  Feller is a co-worker and a superior at AgCountry.  Id. ¶

36.  David also farms individually and with his father, and barters with the Partnership through

his father.  Id. ¶ 62.  In addition, other partnerships and legal entities are alleged to serve roles in

the alleged conspiracy.  These entities include James M. Nelson Limited, the James M Nelson &

Steven B Nelson Partnership, the J&S Nelson Farms LLP & Steven Nelson Partnership, the J&S

Nelson Farms LLP & James M Nelson Partnership, and the Nelson-Freeland Limited Partnership

(collectively, the "Other Entities").  Id. ¶ 5.

## B.  The Scheme

Steven alleges the Defendants committed mail and wire fraud, tax evasion, forgery, bank

fraud, and money laundering.  According to Steven, beginning in 1998, James, in concert with

AgCountry employees Feller and Skjerven, diverted J&S funds for the economic benefit of the

Defendants.  Steven alleges James used income and estate planning techniques that primarily

benefitted him and his family at the expense of Steven and J&S.  According to Steven, this

conduct increased James' distributions, while decreasing J&S's income and the funds available

for distributions to Steven.  Steven also alleges James withdrew money from J&S to pay personal

expenses—bills, taxes, loan obligations, home improvements, and more—and to purchase land

for personal use.  Steven maintains Feller participated in the scheme by using his accounting

expertise to hide James' expenses as legitimate J&S business expenses by preparing and filing

false Partnership tax documents with the IRS.   Steven alleges Skjerven participated in the

scheme by initiating wire transfers from the J&S account at James' request, filing false and

forged loan applications, structuring high interest loans that benefited AgCountry and harmed

J&S, and employing loan manipulation techniques to disguise the scheme from the Federal Farm

Program and from Steven.

## III.  DISCUSSION

### A.  Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure states that a party may move to dismiss a

complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

The Court construes the pleadings in the light most favorable to the nonmoving party, and the

facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir.

1994).

Working in combination with Rule 8, Rule 12 requires the plaintiff's factual allegations

to "raise a right to relief above the speculative level," and push claims "across the line from

conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  In other

words, the complaint must establish more than a "sheer possibility that a defendant has acted

unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

However, a court "must not presume the truth of legal conclusions couched as factual

allegations," and should "dismiss complaints based on 'labels and conclusions, and a formulaic

recitation of the elements of a cause of action.'"  Hager v. Ark. Dept. of Health, 735 F.3d 1009,

1013 (8th Cir. 2013) (quoting, in part, <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>Retro TV Network, Inc. v. Luken Commc'ns, LLC</u>, 696 F.3d 766, 769 (8th Cir. 2012) ("Conclusory statements and naked assertion[s] devoid of further factual enhancement are insufficient.") (quotations and alterations omitted).

Since some of Steven's predicate RICO activities allege fraud, the heightened pleading standard of the Federal Rule of Civil Procedure 9 must be satisfied as to the fraud allegations. <u>Target Corp. v. LCH Pavement Consultants, LLC</u>, No. 12-1912, 2013 WL 2470148, at *2 n.1 (D. Minn. June 7, 2013); Fed. R. Civ. P. 9. "Under Rule 9(b)'s heightened pleading standard, allegations of fraud . . . [must] be pleaded with particularity. In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." <u>Crest Constr. II, Inc. v. Doe</u>, 660 F.3d 346, 353 (8th Cir. 2011) (quoting <u>Summerhill v. Terminix, Inc.</u>, 637 F.3d 877, 880 (8th Cir. 2011) (alteration in original, citations and internal quotation marks omitted)).

## B. RICO

Section 1962 of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions." <u>Dahlgren v. First Nat'l Bank of Holdrege</u>, 533 F.3d 681, 689 (8th Cir. 2008) (quoting 18 U.S.C. § 1964(c)). RICO is a unique cause of action aimed at "eradicating organized, long-term, habitual criminal activity." <u>Crest Constr. II, Inc.</u>, 660 F.3d

at 353 (quoting <u>Gamboa v. Velez</u>, 457 F.3d 703, 705 (7th Cir. 2006)).  "A violation of § 1962(c)

requires [plaintiffs] to show (1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity."  <u>Nitro Dist., Inc. v. Alticor, Inc.</u>, 565 F.3d 417, 428 (8th Cir. 2009)

(internal quotation marks omitted).

Steven alleges an association-in-fact enterprise existed between the Defendants for at

least the past 10 years.  According to Steven, James headed the enterprise and stole money from

the Partnership and the Other Entities with the accounting and banking assistance of Feller and

Skjerven.  Steven claims the Defendants committed various illegal acts, such as mail and wire

fraud, as part the alleged scheme.

Even if these allegations sufficiently plead the enterprise requirement, Steven's RICO

claim fails for at least two independent reasons:  1) the Amended Complaint does not alleges that

Defendants engaged in a pattern of racketeering activity and, 2) the Amended Complaint does not

allege that the Defendants commited a predicate RICO crime.  <u>See</u> <u>Craig Outdoor Adver., Inc. v.</u>

<u>Viacom Outdoor, Inc.</u>, 528 F.3d 1001, 1028 (8th Cir. 2008) (holding that failure to show

evidence of "any one element of a RICO claim means the entire claim fails").

## 1.  Pattern of Racketeering Activity

To satisfy the pattern element, a plaintiff must allege "two or more related acts of

racketeering activity that 'amount to or pose a threat of continued criminal activity.'"  <u>Nitro Dist.</u>,

565 F.3d at 428 (quoting <u>Wisdom v. First Midwest Bank, of Poplar Bluff</u>, 167 F.3d 402, 406 (8th

Cir. 1999)).  This requirement is commonly referred to as "continuity plus relationship."

<u>Handeen v. Lemaire</u>, 112 F.3d 1339, 1353 (8th Cir. 1997) (quoting <u>H.J., Inc. v. Nw. Bell Tel.</u>

<u>Co.</u>, 492 U.S. 229, 239 (1989)).  A number of factors have been identified to assist courts in

determining whether a RICO pattern has been established.  W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'Ship v. Market Square Assocs., 235 F.3d 629, 633 (D.C. Cir. 2001).  These factors include "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."  Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411–13 (3d Cir. 1991)).  While the Supreme Court's ruling in H.J., Inc. seemingly rejected the multiple scheme test for the continuity requirement, many courts have been reluctant to sanction RICO claims that involve a single scheme, a single injury, and a single victim.  492 U.S. at 240–41; AB Mauri Food, Inc. v. Harold, No. 7-811, 2008 WL 878451, at *3 (E.D. Mo. Mar. 27, 2008).  Under these circumstances—single scheme, single injury, limited victims—the court in Edmondson claimed it is "virtually impossible . . . to state a RICO claim."  48 F.3d at 1265.

The allegations here are similar to those in W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'Ship, a purported RICO case asserted by a limited partnership against its partner in developing a real estate project.  235 F.3d at 631.  The plaintiff, Western, alleged that for more than eight years, the defendant, Market, "repeatedly violated partnership agreements, transmitted fraudulent accounting statements, and stole the value of Western's partnership interest."  Id. While Western alleged four fraudulent schemes, the Court of Appeals for the District of Columbia found otherwise and determined "that Western's four purported schemes are merely a cosmetic disguise of a single scheme."  Id. at 634.  After recognizing that a single scheme may suffice for purposes of RICO, the court reached the following conclusion:

Finally, not to be overlooked is the character of the alleged racketeering activity.

7

> The amended complaint describes a business dispute about cost and income projections, and the priority of allegations, rather than a wide-ranging series of extensive criminal schemes.  Market's conduct can basically be characterized as beginning with fraudulent budget underestimates, with the subsequent predicate acts serving as attempts to cover up or shift the debt burden caused by cost overruns. . . .  Because most of the predicate acts were mailings or faxes that relate back to an initial misrepresentation, and because the parties' dispute appears to be more in the nature of an ordinary business deal gone sour, the activity encompassed by Western's amended complaint . . . cannot be a RICO violation.

Id. at 636 (citation and quotation marks omitted).

In a very similar fashion, the Amended Complaint in this case purports to allege multiple schemes—the scheme to defraud Steven; the scheme to disguise the activities of the alleged enterprise from the Federal Farm Program, taxing authorities, and Steven; and the scheme to defraud a financial institution.  Upon closer examination, however, the distinctions between the schemes are specious.  While Steven alleges the acts of the Defendants amount to multiple, discrete schemes, they are entwined in the same fraudulent scheme; the scheme to defraud Steven from his partnership interest.  See Dewitt Ins., Inc. v. Horton, No. 13-2585, 2014 WL 2208073, at *5 (E.D. Mo. May 28, 2014) (noting that multiple allegations of fraudulent activity "were, at most, performed as part of a single effort to defraud Plaintiff"); Madden v. Gluck, 815 F.2d 1163, 1164 (8th Cir. 1987) ("[A]lthough the alleged acts were sufficient to form a pattern, they constituted mere subdivisions of only one fraudulent scheme.  Thus, . . . the alleged acts lacked sufficient continuity to form a 'pattern of racketeering activity.'").  The alleged schemes here purportedly involving wire and mail fraud spanning 10 years, are not alleged to have any other goal beyond increasing James' financial wealth at the expense of his brother, Steven.  What is alleged is one partner using the assets of the Partnership for his personal use and a series of acts by the Defendants to conceal this conduct.  As such, the alleged conduct constitutes a single

8

scheme to accomplish one discrete goal, directed at one individual with no potential to victimize

other persons or entities.[2]  Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1273–74 (10th Cir.

1989).  The objectives of the RICO statute would not be served by recognizing such a claim here.

### 2. Predicate Crimes

Even if a pattern of racketeering activity had been adequately pled, the Amended

Complaint fails to assert a RICO claim for the independent reason that Steven has not pled a

predicate RICO crime.  "[C]ivil liability under 18 U.S.C. § 1962(c) requires a named defendant

to have participated in the commission of two or more predicate crimes within the compendium

described in 18 U.S.C. § 1961(1)."  Miranda v. Ponce Fed. Bank, 948 F.2d 41, 45 (1st Cir. 1991).

The Amended Complaint lists mail fraud, wire fraud, tax evasion, forgery, bank fraud,

and money laundering as predicate crimes.  However, tax evasion and forgery are not predicate

RICO crimes listed in 18 U.S.C. § 1961(1).  As to the others, Defendants argue that the

allegations do not properly state a mail or wire fraud claim because the execution of the fraud did

not rely on the mail or wire, and the bank fraud allegation is lacking because Steven is not a

financial institution.  Defendants further argue that money laundering is not sufficiently pled and

the Amended Complaint fails to allege a separate, previous crime that was covered up through

the alleged laundering activities.

Steven disagrees, arguing that the use of the mail and wire was an integral piece of

carrying out the scheme.  Steven also counters that false tax returns were either mailed or

transmitted through the wires, and that bank loans were approved with signatures that were

---

[2] Steven's attempt to claim the government is an injured party due to lost tax revenue is unavailing because any tax injury occasioned to the government is not the direct result of the fraud.  W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'Ship, 235 F.3d at 635.

knowingly forged.  Finally, Steven alleges James' Partnership withdrawals and the associated

improper accountings resulted in tax-free laundered money.

### a.  Mail and Wire Fraud

Steven alleges James committed mail fraud, in violation of 18 U.S.C. § 1341, and wire

fraud, in violation of 18 U.S.C. § 1343, when he diverted Partnership funds to pay personal taxes,

credit card bills, and other personal expenses.  Feller is alleged to have aided and abetted James'

mail and wire fraud by filing false tax documents and creating fictitious journal entries to cover

up the money withdrawn from J&S, and Skjerven is alleged to have initiated wire transfers of

J&S funds at James' behest.

"When pled as RICO predicate acts, mail and wire fraud require a showing of:  (1) a plan

or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires

will be used, and (4) actual use of the mail or wires to further the scheme."  Wisdom, 167 F.3d at

406.  Wire fraud is established by very similar elements.  United States v. Louper-Morris, 672

F.3d 539, 555 (8th Cir. 2012).  "The crime of mail [or wire] fraud is broad in scope and its

fraudulent aspect is measured by a nontechnical standard, condemning conduct which fails to

conform to standards of moral uprightness, fundamental honesty, and fair play."  Atlas Pile

Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 991 (8th Cir. 1989).  "Because misrepresentations

of fact are not necessary to the offense, it follows that no misrepresentations need be transmitted

by mail or wire:  even routine business communications in these media may suffice to make a

scheme of false dealing into a federal offense."  Abels v. Farmers Commodities Corp., 259 F.3d

910, 918 (8th Cir. 2001); see also Atlas Pile Driving Co., 886 F.2d at 992 ("[A] mailing [that

serves as an element of mail fraud] may be a routine mailing or even one that is sent for a

legitimate business purpose so long as it assists in carrying out the fraud") (internal quotation marks omitted).  In civil RICO actions, § 1964(c) requires proof that the pattern of mail or bank fraud violations, not some other act, caused the plaintiff's injury.  See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647, 715 (2008); Schmuck v. United States, 489 U.S. 705, 712, 715 (1989) ("Mailing that is incident to an essential part of the scheme satisfies the mailing element," even when the mailing itself "contain[s] no false information.").

Steven does not allege that James used the mail or wires to communicate any false or misleading statements, nor does Steven allege that James' use of the mail or wires was incident to an essential part of the scheme.  Put simply, if the allegations are true, James defrauded Steven by falsely allocating personal withdrawals to Steven's draw account, thus lowering Steven's capital account while inflating his tax burden.  The fraudulent act was the improper allocation of the withdrawal, not the withdrawal itself.  James, as acknowledged by Steven, had Partnership authority to perform the withdrawals; there is no allegation that James used the mail or wires to fraudulently obtain the Partnership funds.

Steven next alleges James used the improperly assigned Partnership funds to pay for his own personal expenses, such as property improvements and phone and utility bills.  While James allegedly paid these expenses by mailing a check or making an electronic payment, the mail or wire was simply the conduit to satisfy James' debt obligations.  Even without James' use of the mail or wires, the alleged fraud could still be carried out.  While James was likely to eventually use the mail or wire to spend the Partnership funds—electronically withdrawing the funds as cash, using an electronic form of payment such as a credit or debit card, or mailing a check—this is not mail or wire fraud.  See id. at 723 ("In other words, it is mail fraud, not mail and fraud, that

incurs liability.  This federal statute is not violated by a fraudulent scheme in which, at some

point, a mailing happens to occur—nor even by one in which a mailing predictably and

necessarily occurs.  The mailing must be in furtherance of the fraud.").  Even if all allegations are

taken as true, the Amended Complaint does not sufficiently state that the use of the mail and

wires were either incident to an essential part of the scheme or assisted James in carrying out the

alleged fraud.

The Amended Complaint is similarly deficient in its allegations concerning the remaining

Defendants.  Steven alleges that Feller prepared and electronically filed fraudulent tax returns on

behalf of the alleged RICO enterprise and created false or conspicuously confusing and

complicated journal entries to obfuscate James' theft.  Without more, these allegations do not

sufficiently allege mail or wire fraud.  Feller's limited use of the mail or wire to file tax returns,

is not an essential component of the fraud and did not directly harm Steven.  Moreover, the

allegation of an erroneous tax return is not sufficiently pled to satisfy Rule 9's particularity

requirement.  See Crest Constr. II, Inc., 660 F.3d at 353.  Generally alleging an array of legal

entities and mechanisms designed to hide James' ill-obtained funds does not satisfy Rule 9's

requirement of specific allegations.   The creation of erroneous or misleading journal entries may

be incident to an essential part of the scheme but because this act did not use the mail or wire, it

is not mail or wire fraud.

Skjerven is alleged to have initiated wire transfers of J&S funds at James' behest and

structured loans to aid James' theft.  As to requesting the wire transfers, James had Partnership

authority to withdraw Partnership funds.  This is not the fraudulent act.  As discussed above, the

fraud was falsely attributing the withdrawals.  Since this act did not involve a wire transfer,

James merely exercising his authority through Skjerven does not constitute wire fraud.  The loan

allegations are insufficient because James also had Partnership authority to incur the debt.

Structuring and effecting the loans was therefore not fraudulent.  Finally, AgCountry's alleged

involvement in the mail and wire fraud allegations is dependent on Skjerven's actions and

therefore, does not constitute mail or wire fraud.

### b.  Bank Fraud

Steven additionally alleges the predicate act of bank fraud, in violation of 18 U.S.C. §

1344.  However, only financial institutions have standing to assert bank fraud as a predicate act

for RICO purposes.  Starfish Inv. Corp. v. Hansen, 370 F. Supp. 2d 759, 773 (N.D. Ill. 2005)

("[O]nly financial institutions have standing to allege violations of the financial institution fraud

statute, 18 U.S.C. § 1344, as predicate acts for RICO purposes."); see also Yesko v. Fell, No. 13-

3927, 2014 WL 4406849, at *11 (D. Md. Sept. 5, 2014) (citing cases that hold only financial

institutions have standing to assert bank fraud as a RICO predicate).  Accordingly, the Amended

Complaint fails to allege bank fraud as a predicate RICO act.

### c.  Money Laundering

Finally, Steven alleges James was unlawfully conducting financial transactions designed

to conceal or disguise the nature, location, source, ownership, and control of funds in violation of

the money laundering statute, 18 U.S.C. § 1956.  Money laundering requires a defendant to

conduct a financial transaction designed to conceal the proceeds of a different, specified unlawful

activity.  United States v. Awada, 425 F.3d 522, 524 (8th Cir. 2005).

Steven's money laundering claim fails as a matter of law because the Amended

Complaint does not identify a specific unlawful activity distinct from the alleged racketeering

scheme that generated illicit funds that were then funneled through a legitimate business. Taking the allegations as true, the funds that were obtained as a result of James' fraudulent behavior—the Partnership funds that were improperly reflected in the Partnership's books—were then either spent on lawful expenses or were illicitly sheltered from taxation. This is not money laundering. Steven fails to allege a legitimate business that was used to scrub the fraudulently obtained money into ostensibly legitimate funds. See United States v. Nattier, 127 F.3d 655, 659 (8th Cir. 1997) (noting that the defendants "represent[ed] the illegal proceeds as funds of their legitimate business"); Awada, 425 F.3d at 524 ("That underlying activity must be separate from the actual laundering. . . ."); see also United States v. Seward, 272 F.3d 831, 836 (7th Cir. 2001) ("The transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction, because the money laundering statutes criminalize transaction[s] in proceeds, not the transaction[s] that create[] the proceeds.") (internal quotation marks omitted, alterations in original). For these reasons, the Amended Complaint does not allege the predicate RICO act of money laundering.

## IV. CONCLUSION

Congress enacted RICO to protect businesses against competitive injury from organized crime. Indeed, RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." Crest Constr. II, Inc., 660 F.3d at 353. Without diminishing the severity of the allegations or trivializing any pecuniary or other harm Steven may have in fact incurred, this is not a RICO case.

Because Steven has not alleged any state law claims and instead depends entirely on his federal RICO allegations, the Amended Complaint must be dismissed. Based upon the

14

foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant James Nelson's Motion to Dismiss [Docket No. 30] is **GRANTED**.

2.  Defendants Chris Feller, Randy Skjerven, and AgCountry Farm Credit Services,

ACA's Motion to Dismiss [Docket No. 34] is **GRANTED**.

3.  Plaintiff Seven Nelson's Amended Complaint [Docket No. 29] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 8. 2015